**Leonel Torres HERRERA, Petitioner–Appellee,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellant.**

No. 92–2114.

United States Court of Appeals, Fifth Circuit.

Feb. 18, 1992.

Dan Morales, Atty. Gen., Joan C. Barton, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Mark Evan Olive, Tallahassee, Fla., for petitioner-appellee.

Before KING, DAVIS and JONES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

James A. Collins, Director, Texas Department of Criminal Justice, appeals the district court's order staying the execution of Leonel Torres Herrera. Herrera's execution is scheduled for February 19, 1992, between midnight and dawn.

### I.

The district court's thorough memorandum opinion and order of February 17 outlines in detail the critical steps which have been taken in this case. In summary, Herrera was sentenced to death on January 21, 1982, following his conviction for capital murder. The Texas Court of Crimi-

nal Appeals affirmed petitioner's conviction and death sentence, *Herrera v. State,* 682 S.W.2d 313 (Tex.Crim.App.1984) (en banc). The United States Supreme Court denied certiorari, *Herrera v. Texas,* 471 U.S. 1131, 105 S.Ct. 2665, 86 L.Ed.2d 282 (1985). Petitioner filed a petition for writ of habeas corpus in the 197th District Court of Cameron County, Texas. The convicting court recommended that relief be denied, and, in August 1985, the Texas Court of Criminal Appeals denied relief. *Ex parte Herrera,* Application # 12,848–02–Texas Criminal Appeals 1985. Thereafter, on August 7, 1985, Herrera filed his first federal petition for habeas corpus, and the district court stayed Herrera's scheduled execution. In October 1989, the federal district court rejected Herrera's habeas petition and dissolved the stay of execution. Herrera appealed that judgment to this court. On June 25, 1990, we affirmed the district court judgment and vacated Herrera's stay of execution, *Herrera v. Collins,* 904 F.2d 944 (5th Cir.1990). The Supreme Court denied certiorari, *Herrera v. Collins,* — U.S. ——, 111 S.Ct. 307, 112 L.Ed.2d 260 (1990).

Herrera filed his second application for state writ of habeas corpus on December 12, 1990. On January 14, 1991, the trial court withdrew an earlier order, entered findings of fact and conclusions of law, and denied habeas relief. The Court of Criminal Appeals denied relief on May 29, 1991, on the basis of the trial court's finding and conclusions and vacated a stay of execution, *Ex parte Herrera,* 819 S.W.2d 528 (Tex.Crim.App.1991).

On December 17, 1991, Herrera filed a petition for writ of certiorari in the United States Supreme Court, which is still pending. Herrera filed the instant application for federal writ of habeas corpus in the district court on February 16, 1992, raising five claims for relief.[1] The claims that Herrera asserts in his present petition are not duplicative of the claims he asserted in his first petition.

The district court denied all relief on claims 2, 3, 4 and 5 on grounds of writ abuse. The court initially denied petitioner's *Brady* claim, (which was included as part of his first claim) on grounds that insufficient facts were presented to support this claim. On reconsideration, the district court, however, concluded that sufficient facts were presented to require a hearing, which it scheduled for February 21, 1992. The district court granted a stay of execution pending that hearing. The district court also granted petitioner's motion for a stay of execution to permit petitioner to further litigate in state court the second prong of his first claim—actual innocence. Alternatively, the court granted a stay pending rendition of an opinion by this court in *May v. Collins,* No. 91–6273. The district court also signed a Rule 54(b) judgment dismissing claims 2–5 and issued a certificate of probable cause as to these claims. Collins filed an appeal from the district court's order granting a stay of execution and moved this court for an order vacating the stay of execution.

1. Herrera raises the following claims in the instant habeas petition:

1. The State's failure to reveal exculpatory evidence resulted in the conviction and sentence of an innocent person, in violation of the Sixth, Eighth, and Fourteenth Amendments. Petitioner is innocent, another person has confessed to the crime, and the Petitioner's execution would violate the Eighth and Fourteenth Amendments.

2. Petitioner was tried and sentenced to death for the murder of two police officers by a jury whose members included a police officer detective in an office that investigated the case, in violation of the Petitioner's Sixth, Eighth, and Fourteenth Amendment rights.

3. During trial, recesses, and juror deliberations, juror-police officer Bressler was armed,

and at least one juror noticed; in addition, and contrary to his sworn statements during voir dire, this officer knew one of the victims. These facts reveal that Petitioner's conviction and death sentence occurred in violation of his Sixth, Eighth, and Fourteenth Amendment rights.

4. Petitioner's sentencers were precluded from considering evidence which counseled in favor of a sentence less than death, in violation of Petitioner's Sixth, Eighth, and Fourteenth Amendment rights.

5. The trial judge wrongfully refused to allow Petitioner to speak at all during Petitioner's trial and capital sentencing proceeding, thereby violating Petitioner's federal Constitutional rights.

## II.

For reasons stated by the district court, it correctly rejected petitioner's claims 2, 3, 4 and 5 because the petitioner has clearly abused the writ as to those claims. *See McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

■ On the *Brady* prong of petitioner's first claim, we agree with the district court's initial conclusion that petitioner neither proffered evidence nor alleged particularized facts that demonstrate that the state withheld any favorable evidence from Herrera before his trial. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As stated above, the district court, on reconsideration, concluded that the pleadings and affidavits were sufficient to require a hearing on one issue: whether the state knew that petitioner was innocent of the murder of Officer Carrisalez and withheld that information from Herrera before his trial. We are not persuaded that Herrera's petition, as amplified by his exhibits, states specific facts that "point to a 'real possibility of constitutional error.' " *Blackledge v. Allison,* 431 U.S. 63, 75 n. 7, 97 S.Ct. 1621, 1630 n. 7, 52 L.Ed.2d 136 (1977). (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases, 28 U.S.C. (1977 Supp.), p. 337).

Herrera never identifies any specific evidence that he contends was withheld by the prosecutor before trial. Instead, he relies on affidavits and newspaper clippings to suggest that the prosecutor knew that Raul Herrera, rather than Leonel Herrera, committed the murders. Nothing in any of the exhibits suggests, however, that the prosecutor could have known of the information contained within them at the time of Herrera's trial.

The newspaper clippings upon which Herrera relies make no reference at all to the instant case and do not refer to police corruption in connection with drug activity in South Texas prior to 1985—three years after Herrera's trial. Further, they contain nothing to suggest that anyone who testified at his trial or any officials in Cameron County, where Herrera was convicted,

have ever been involved in any wrongdoing. The affidavit of Raul Herrera, Jr., states that he told a police officer that his father committed the murders rather than Petitioner, but he does not say when or to whom this information was conveyed. Consequently, Herrera has not pled with sufficient particularity the elements of his *Brady* claim to require a hearing. *Id.*

■ Moreover, the exculpatory evidence on which Herrera relies is a claim that someone else, and not he, committed the offenses of which he was convicted. The person at whom he points the finger is his brother, Raul, now deceased. Particularly in light of the fact that his brother allegedly committed the offense in the car which Petitioner normally drove, this information clearly was not only available to the defense, but was likely *more* available to the defense than it was to the prosecution. "*Brady* does not oblige the government to provide the defendants with evidence that they could obtain from other sources by exercising reasonable diligence." *United States v. McKenzie,* 768 F.2d 602, 608 (5th Cir.1985) (citation omitted), *cert. denied,* 474 U.S. 1086, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986). "When evidence is available equally to the defense and the prosecution, the defendants must bear the responsibility for their failure to diligently seek its discovery." *Id., citing United States v. Milstead,* 671 F.2d 950, 953 (5th Cir.1982). Herrera's attempt to couch this claim in terms of a *Brady* violation therefore is disingenuous.

■ We therefore turn to the second issue which the district court concluded required it to grant a stay of execution. As a part of his first claim, Herrera contended that he was actually innocent of Carrisalez's murder. Herrera filed a substantially identical claim in the state habeas court. In support of his state habeas claim, Herrera attached two affidavits. First, he attached the affidavit of attorney Hector J. Villareal, who had represented petitioner's brother, Raul Herrera, on a charge of attempted murder. Villareal asserted that Raul Herrera confessed to him that Raul,

not petitioner, murdered both Rucker and Carrisalez. Herrera also submitted the affidavit of Franco Palacios, one of his brother Raul's cell mates. Palacios stated that Raul confessed to him that Raul had murdered Rucker and Carrisalez.

When Herrera filed his federal habeas petition, he attached two additional affidavits. The most significant affidavit he attached is the affidavit of his nephew, Raul Herrera, Jr., the son of Raul Herrera. Raul Herrera, Jr. stated that he was with his father on the date of the murders and that he saw his father kill both Rucker and Carrisalez. According to Raul Herrera, Jr., the petitioner was not present when the murders occurred. Raul, Jr. also stated that he told a police officer what occurred but the officer told him never to repeat it. Raul, Jr. did not suggest when this conversation occurred. Raul, Jr. stated that no attorney representing the petitioner had ever asked him about the events until recently. His affidavit is dated about two weeks ago, January 29, 1992. Petitioner also included the affidavit of an old schoolmate of the Herrera brothers, who related that Raul, Sr. made a confession to him similar to the one attorney Villareal asserted that Raul had made.

In his federal habeas petition, Herrera asserted that he was entitled to a hearing on his actual innocence claim, particularly in light of Raul Herrera, Jr.'s affidavit. The district court concluded that petitioner should have an opportunity to present the affidavit of the alleged eye witness, Raul Herrera, Jr. The district court then granted the petitioner's stay of execution and retained jurisdiction of the petitioner's "actual innocence" claim until noon, February 21, 1992. The district court directed that it would dismiss that claim without prejudice on February 21, 1992, provided petitioner had filed a successive state habeas petition so that he could present the additional evidence to that court.

■ We begin our analysis of the propriety of the district court's stay with the recent admonition of the Supreme Court: "A stay of execution pending disposition of a second or successive federal habeas petition should be granted only when there are 'substantial grounds upon which relief may be granted.'" *Delo v. Stokes*, 495 U.S. 320, 110 S.Ct. 1880, 1881, 109 L.Ed.2d 325, 328 (1990) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 895, 103 S.Ct. 3383, 3396, 77 L.Ed.2d 1090 (1983)). This court has held that a court should consider four factors in deciding whether to grant a stay of execution:

(1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest.

*Byrne v. Roemer*, 847 F.2d 1130, 1133 (5th Cir.1988) (quoting *Streetman v. Lynaugh*, 835 F.2d 1521, 1524 (5th Cir.1988)). Although in a non-abuse context the movant in a capital case " 'need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities [i.e., the other three factors] weighs heavily in the favor of granting the stay.'" *Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir.) (quoting *O'Bryan v. McKaskle*, 729 F.2d 991, 993 (5th Cir.1984)), *cert. denied*, 483 U.S. 1036, 108 S.Ct. 6, 97 L.Ed.2d 796 (1987). However, the Supreme Court's recent decision in *Delo v. Stokes*, makes it clear that, in a case involving a second or subsequent petition, the latter three factors cannot weigh in favor of a stay in the absence of substantial legal claims upon which relief may be granted.

■ Herrera's claim of "actual innocence" presents no such substantial claim for relief. The rule is well established that claims of newly discovered evidence, casting doubt on the petitioner's guilt, are not cognizable in federal habeas corpus. *See Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Texas has adopted a similar rule. *See Ex parte Binder*, 660 S.W.2d 103, 104–106 (Tex.Crim.App. 1983) (en banc). Moreover, the right to

collaterally attack a conviction is not a right guaranteed by the Constitution. *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987).

In *Townsend,* the Court held that a federal habeas court must grant an evidentiary hearing on an allegation of newly discovered evidence only when the evidence "bear[s] upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." 372 U.S. at 317, 83 S.Ct. at 759. We have recognized the above statement as the Court's holding in at least two cases, *Armstead v. Maggio,* 720 F.2d 894, 896 (5th Cir.1983) (per curiam) and *Boyd v. Puckett,* 905 F.2d 895, 896 (5th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 526, 112 L.Ed.2d 537 (1990).

■ Thus, once Herrera's *Brady* claim is rejected, Herrera's "actual innocence" claim does not allege a ground upon which habeas relief can be granted. Under Texas law, a claim of innocence based on newly discovered evidence is grounds for a new trial, but such a claim will not support collateral review. *See, e.g., Ex parte Binder,* 660 S.W.2d at 105–06. Herrera, therefore, has presented no claim for collateral relief under Texas law. Consequently, we can find no legal justification to permit him to present, in piecemeal fashion, additional affidavits to the state court. We conclude that the district court erred in granting a stay of execution for this purpose.

*May v. Collins* relied upon as an alternate ground for a stay, is inapposite. The question in *May* concerns whether a finding of fact by a state habeas court, based upon affidavits alone, is entitled to the presumption of correctness. But the facts at issue in *May* implicated a constitutional defect in May's conviction. No such question is presented in this case.

### III.

■ The district court issued a certificate of probable cause (CPC) with respect to claims 2–5 although it rejected any relief on these claims. This certificate implies that the district court found that petitioner had made a substantial showing of the denial of a federal right with respect to these claims. *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Ordinarily a stay of execution accompanies such a finding, and we are uncertain whether the district court inadvertently failed to grant a stay on these claims. Because of the ambiguity of the grant of CPC on claims 2–5 and the failure to grant a stay, the press of time requires us to address the propriety of the district court's issuance of CPC.

For reasons stated by the district court, we fully agree that claims 2, 3, 4, and 5 are barred because petitioner abused the writ. We find no substantial grounds upon which relief might be granted on these claims. Accordingly, we vacate the certificate of probable cause as improvidently granted. *See Cuevas v. Collins,* 932 F.2d 1078, 1082 (5th Cir.1991).

In sum, on claim 1, we conclude that Herrera has failed to present a substantial ground upon which relief might be granted. *See Delo v. Stokes,* 495 U.S. 320, 110 S.Ct. 1880, 1881, 109 L.Ed.2d 325 (1990). As we stated above, the petitioner failed to allege sufficiently particularized facts to entitle petitioner to relief on his *Brady* claim. The "actual innocence" claim standing alone does not state a claim upon which habeas relief can be granted by either a federal habeas court or a Texas habeas court. We therefore find no legal justification to stay the execution to allow petitioner to litigate further in state court. Accordingly, we grant Collins's motion to vacate the stay of execution entered by the district court.